UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 0 3 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-328-GWU

EVELYN LYNCH,                                              PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT,

## INTRODUCTION

Evelyn Lynch originally brought Lynch v. Barnhart, London Civ. A. No. 03-230 (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of May 19, 2004 (Tr. 885-893), it is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

1

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled.  If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.  Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id.  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d

2

654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part <u>Garner</u> test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," <u>Landsaw v. Secretary of Health and Human Services</u>, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that she or he is unable to return to this work. <u>Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.

3

Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an

4

occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lynch, a 44 year-old former cashier with a high school education, suffered from impairments related to coronary artery disease, discogenic and degenerative disorders of the back, hypothyroidism, dysfunctional uterine bleeding, anemia and treatment for depression.  (Tr. 407-408).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a full range of medium level work. (Tr. 412).  Since the claimant would still be able to perform her past relevant work, she could not be considered totally disabled. (Tr. 412).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

5

In determining that Lynch could return to her past relevant work, the ALJ relied heavily upon the testimony of Vocational Expert Katherine Bradford. Bradford indicated that the plaintiff's past cashiering work had been light in exertion and semi-skilled. (Tr. 936). The witness testified that this job could still be performed by one of the claimant's age, education and work background who could perform the full range of medium level work. (Tr. 936). Therefore, assuming that the vocational factors considered by Bradford fairly depicted Lynch's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The action was previously reversed and remanded to the Commissioner because the ALJ did not properly consider Lynch's physical condition. (Tr. 892). At that time, Dr. Thomas Bulle had been the only treating or examining physician of record to identity specific functional restrictions and these were far more severe than those presented in the ALJ's hypothetical question. (Tr. 892). Dr. John Rawlings (Tr. 293-302) nor Dr. Lynnell Dupont (Tr. 333-341), the non-examining medical reviewers, did not articulate reasons why their opinions differed from that of the examining source and, so, the ALJ could not rely upon them to offset Dr. Bulle as required by Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

Dr. Bulle had related his restrictions primarily to Lynch's heart problems. Upon remand, Dr. Mitchell Collman, a cardiovascular specialist, testified at the administrative hearing as a medical expert. Dr. Collman noted the plaintiff's history of coronary artery disease and a mild heart attack in November of 2000. (Tr. 925). The doctor reported that she underwent left internal bypass surgery to her left descending artery. (Tr. 925). He noted that the medical records continue to indicate an excellent prognosis with no arrhythmia or congestive

6

heart failure. (Tr. 925). A May, 2002 echocardiogram was reported to have revealed no clinically significant findings. (Tr. 926). A February, 2003 myocardial profusion scan was normal. (Tr. 926). Based upon the medical record which revealed a mild heart attack with residual normal left ventricular function, successfully bypassed single vessel disease, and a recent functional study showing no ischemia, Dr. Collman opined that, from a cardiac standpoint, the claimant could perform the full range of medium level work and expressed disagreement with Dr. Bulle's limitations. (Tr. 928-929). Dr. Collman noted Lynch's recent chest pain complaints but found no objective medical data in the record to support them. (Tr. 929-930). The Medical Advisor indicated that references in the reports of Dr. Vicente Kaw, another treating source, to chest wall pain, did not refer to cardiac pain which could be construed as angina or ischemic cardiac pain but was from the chest wall. (Tr. 932). The physician also opined that Dr. Kaw's report of mild tricuspid insufficiency would not be clinically significant. (Tr. 933). Therefore, the Court finds that Dr. Collman has clearly articulated strong reasons to support his differing opinion and the ALJ could properly rely upon him to offset the opinion of Dr. Bulle.

Lynch argues that the ALJ's reliance upon Dr. Collman was misplaced because he did not see Exhibit B-28 from Dr. Kaw which contained the results of an August, 2004 Cardiac Doppler Ultrasound Echocardiogram showing an ejection fraction of 55 percent. (Tr. 805). This report was submitted into the record on November 19, 2004, after the November 2, 2004 hearing at which Dr. Collman testified. (Tr. 803). However, the ALJ did submit Exhibit B-28 to Dr. Collman who replied in a letter that this information did not change his opinion that the full range of medium level work could still be performed. (Tr. 814). The echocardiogram report itself actually stated that the 55 percent rejection fraction

7

indicated adequate left ventricular functioning. (Tr. 805). Therefore, the Court must reject the plaintiff's argument.

Lynch asserts that the ALJ erred in failing to state the reasons why he rejected the opinion of Dr. Bulle and, so, violated her procedural rights as indicated in the recent case of Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). However, the ALJ extensively discussed the reasons for his rejection of Dr. Bulle's restrictions including the lack of sufficient objective medical data supporting Dr. Bulle's opinion in his treatment notes, the reports of Dr. Kaw, and the testimony of Dr. Collman. (Tr. 408-410). Therefore, the Court must reject the plaintiff's argument.

Lynch argues that the ALJ erred in failing to find that her hearing problem was a "severe" impairment. Dr. Bulle indicated that the claimant would need to avoid concentrated exposure to noise. (Tr. 272). However, the ALJ did present an alternative hypothetical question to Bradford at the most recent hearing which included a need to avoid concentrated exposure to noise. (Tr. 937). This restriction would eliminate the plaintiff's past work but a significant number of other sedentary level jobs would remain available. (Tr. 938-939). The Court notes that at the October, 2002 hearing Vocational Expert Susan Kehoe was presented with a hypothetical question which included a restriction to light level work and a need for a quiet work environment and she also identified a significant number of jobs in the national economy. (Tr. 63-65). Both of these alternative hypothetical questions provide support for the administrative decision and, so, any error on the part of the ALJ in failing to find that Lynch suffered from a "severe" hearing impairment is harmless.

Lynch also asserts that the ALJ erred in failing to find that she suffered from a "severe" mental impairment. The plaintiff notes the July, 2001 report of

8

Dr. Syed Ahsan, who indicated that she would have "difficulty" at a regular job due to her low self esteem, lack of confidence, and enmeshment with her daughter.  (Tr. 395).  The claimant's current Global Assessment of Functioning (GAF) was rated at 60.  (Tr. 394).  Such a GAF suggests the existence of only "moderate" limitations which would not be totally disabling in and of themselves according to the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (4th Ed.-Revised, 1994).  The ALJ cited a number of reasons why he did not believe that this was a "severe" impairment, including Dr. Kaw's treatment records which suggested that this problem had abated since the daughter started school and had been successfully treated with medication. (Tr. 410).  The Court notes that neither Ann Demaree (Tr. 303) nor Edward Stodola (Tr. 318), the non-examining medical reviewers, thought that the claimant suffered from a "severe" mental impairment.  Even if the ALJ erred on this issue, the Court notes that the ALJ at the October, 2002 hearing did include a number of mental factors including a limitation to simple instructions in a low stress, object-focused environment with minimal social interaction with supervisors, co-workers, and the public.  (Tr. 63-64).  These restrictions were essentially compatible with Dr. Ahsan's findings.  As previously noted, Bradford identified a significant number of jobs which could still be performed.  (Tr. 64-65). Therefore, any error on the part of the ALJ with regard to the claimant's alleged mental problems appears harmless.

Finally, Lynch argues that the ALJ erred in finding that her work as a cashier met the requirement of "past relevant work" as defined in the administrative regulations at 20 C.F.R. Section 416.965.  However, even if the plaintiff is correct, both Bradford and Kehoe identified the existence of a significant number of other jobs which could still be performed in response to

9

hypothetical questions which were more restrictive than what the <u>current</u> ALJ found. Therefore, any error is harmless.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___3___ day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE

10